UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RONNIE L. JACKSON, | § | |
| | § | |
| **Plaintiff,** | § | |
| v. | § | **CIVIL ACTION NO.** |
| | § | |
| JOHN E. POTTER, | § | **SA-07-CV-0376 RF (NN)** |
| Postmaster General, | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

This memorandum and recommendation recommends dismissal of this lawsuit.  I have

jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and the

district court's order referring all pretrial matters to me for disposition by order or to aid the

district court by recommendation where my authority as a magistrate judge is statutorily

constrained.[1]  The district court has jurisdiction over the lawsuit under 28 U.S.C. § 1331 because

the case includes claims brought under the laws of the United States—specifically, 42 U.S.C. §

2000e-2—and under 28 U.S.C. § 1346 because the case involves claims against an agency of the

United States government.

## Nature of the Case

Previously, plaintiff Ronnie L. Jackson filed a complaint, naming the United States

Postmaster General as defendant and seeking compensation for alleged unlawful employment

discrimination and for injuries he allegedly sustained while working for the U.S. Postal Service.[2]

---

[1]Docket entry # 9.

[2]*See* SA-04-CV-166, docket entry # 7.

The district court entered a final judgment in that case on December 21, 2004, dismissing

Jackson's claims.[3]

On June 4, 2007, Mr. Jackson filed his complaint in this case.  The complaint also names

the Postmaster General as defendant and seeks compensation for alleged unlawful employment

discrimination.[4]  Although Jackson relies on the same core facts that formed the basis of his first

lawsuit,[5] he now complains about retaliation that allegedly occurred on June 24, 2004 and July

30, 2004.  Jackson maintains that he was discriminated against on June 24, 2004 when Postal

Service manager Jimmy Nuncio listed him absent without leave, and on July 30, 2004 when

Nuncio initiated an investigation into whether Jackson failed to deliver mail.  Jackson contends

he was retaliated against because he would not accept the Postal Service's practice of having

mail carriers urinate at the rear of mail trucks to save time on routes.

The government has moved to dismiss Jackson's claims under Rule 12(b)(6) of the

Federal Rules of Civil Procedure, and in the alternative, moved for summary judgment under

Rule 56.[6]  The government makes five arguments about why the case should be dismissed: (1)

Jackson did not file his lawsuit within the required 90-day time period, (2) Jackson cannot state a

prima facie case of retaliation because he cannot present evidence that the Postal Service's

---

[3]*See* SA-04-CV-166, docket entry # 18.

[4]Docket entry # 4.

[5]To the extent that Jackson may seek to hold the Postmaster General liable for the complaints in his first lawsuit, Jackson may not pursue those claims because such claims are barred by the doctrine of res judicata.  *Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action.").

[6]Docket entry # 7.

nondiscriminatory reason for the challenged actions is pretext for discrimination, (3) Jackson did not exhaust his administrative remedies concerning his alleged constructive discharge, (4) the district court previously dismissed Jackson's claims about an alleged on-the-job injury in June 2002, and (5) the district court lacks jurisdiction over any injury claims under the Federal Employee's Compensation Act.[7]  The district court need not address these arguments because there is a more fundamental reason why Jackson's claims should be dismissed; because Jackson does not complain about conduct proscribed by Title VII or about activity protected by Title VII. If the district court accepts my recommendation to dismiss this case on that basis, the district court should treat the disposition as provided in Rule 56 because I considered the evidence attached to the government's motion.[8]

Jackson's complaint shows that in complaining about retaliation, Jackson does not complain about proscribed conduct or a protected activity.  Two clauses of Title VII make it unlawful for an employer to retaliate against an employee.  The first clause makes it unlawful "to discriminate against an[] . . . employee[] . . . because he has opposed any practice made an unlawful employment practice by [Title VII]. . . ."[9]  The second clause makes it unlawful for an employer to retaliate against an employee "because he has made a charge, testified, assisted, or

---

[7]*See* docket entry # 7, p. 2 (summarizing the government's arguments).

[8]*See* FED. R. CIV. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

[9]42 U.S.C. § 2000e-3(a).

participated in any manner in an investigation, proceeding, or hearing under [Title VII]."[10]

Jackson's complaint does not implicate either of these clauses.  In his complaint, Jackson alleges

that he "was retaliated against repeatedly because [he] would not accept the USPS' routine

traditional practice of <u>urinating in the rear of the USPS federal conveyances to save time on</u>

<u>routes.</u>"[11]  Jackson explained that, "[w]ith the approval of USPS management personnel, mail

carriers routinely used the rear of their USPS vehicles for urinating (periodic defecation) without

any fear of consequences, involving illicit acts.  My refusal to embrace the routine practice was

unacceptable, as far as USPS management personnel were concerned."[12]  This complaint also

formed the basis of Jackson's previous lawsuit in which he complained that "[m]anagement

approved the use of USPS vehicles (LLVs) to be used as latrines for employees to urinate—when

I disapproved, the discrimination begin [sic]."[13]

The first anti-retaliation clause does not apply to Jackson's complaint because Title VII

does not make it unlawful to urinate behind a mail carrier.  Title VII would apply if an employer

required the practice on the basis of an "individual's race, color, religion, sex, or national origin. .

.,"[14] but not otherwise.  Here, Jackson has not alleged that he was required to urinate in the rear

of the mail truck because of his race, color, religion, sex, or national origin.  Jackson's complaint

about the practice of urinating in the rear of mail trucks is not protected under Title VII because

---

[10]*Id.*

[11]*See* docket entry # 4, ¶ 3 (emphasis in original).

[12]*Id.*

[13]SA-04-CV-166, docket entry # 7, ¶ 7.

[14]42 U.S.C. § 2000e-2(a).

his complaint was not directed toward the enforcement of rights protected by Title VII.

Consequently, the first clause does not apply to the conduct that Jackson complains about.

The second anti-retaliation clause does not apply to Jackson's complaint because he did

not allege that the Postal Service discriminated against him"because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

[Title VII]."  He alleged only that he was retaliated against because he would not accept the

Postal Service's practice of requiring employees to urinate in the rear of mail trucks.  Although

retaliation based on Jackson's prior charge of discrimination with the Equal Employment

Opportunity Commission (EEOC) or his prior employment discrimination lawsuit could have

served as the basis for a retaliation lawsuit under the second clause, the government's summary-

judgment evidence shows that Jackson never complained that he was retaliated against because

he filed a charge of discrimination with the EEOC or because he filed a prior lawsuit.

In its adjudication of Jackson's charge of discrimination, the EEOC treated Jackson's

charge as if the second clause applied to Jackson's charge, without determining that the clause

applied.  In the Administrative Law Judge's (ALJ) bench opinion, the ALJ described the issue as

"whether the Complainant, Ronnie L. Jackson, was subjected to discrimination *on the basis of*

*retaliation for prior EEO activity* when, on June 26th, 2004, he was placed on absence-without-

leave status (AWOL) for eight hours and on July 30th, 2004, he was placed in emergency off-

duty status."[15]  The ALJ, however, did not determine that Jackson had participated in an activity

protected by Title VII.  In granting the Postal Service's motion for a directed verdict, the ALJ

began, "[e]ven giving the Complainant the most flexibility possible in analyzing the facts of this

---

[15]*See* docket entry # 7, exh. 11, pp.7-8 (emphasis added).

case, *even assuming that the Complainant could establish that he engaged in protected. . . .*"[16]

The ALJ was unable to complete her statement because Jackson interrupted her, asking "[w]hy are we still wasting time here when you already . . . made up you mind before we even started."[17] After instructing Jackson about the interruption, the ALJ continued and stated the following: "Considering the testimony and all of the evidence in the record, I find that the [Postal Service] has articulated legitimate, non-discriminatory reasons for its actions and the Complainant has failed to produce sufficient evidence of pretext to carry the burden of persuasion to support a finding of discrimination based on retaliation."[18]  These statements and the record of Jackson's administrative hearing show that the EEOC presumed, without deciding, that Jackson complained about discrimination based on his prior charge of discrimination or his prior lawsuit.

During Jackson's hearing, the ALJ tried to ascertain whether Jackson alleged that he was retaliated against because he had filed a prior charge of discrimination and a prior lawsuit, but Jackson's answers were unhelpful.  When the ALJ asked Jackson about the basis of the alleged retaliation, the following colloquy occurred:

> ALJ:          . . . . Is it your testimony that all of this is happening because you refused to urinate in your vehicle?  Yes or no.
>
> Jackson:    That's where it started, but –
>
> ALJ:          Yes?
>
> Jackson:    That's a yes.

---

[16]*Id*. at p. 10.

[17]*Id*.

[18]*Id*. at p. 11.

ALJ:              Okay.  Were other people made to urinate in their vehicles?

Jackson:          Yes.

ALJ:              So, it was pretty much what all carriers had to do; correct?

Jackson:          Not all carriers.

ALJ:              Okay. So, who are – So, just certain people were asked to do this?

Jackson:          That's correct.  Not all carriers –

ALJ:              Okay –

Jackson:          – because, first off, you've got to understand there are female
                  carriers out there.[19]

Although Jackson seemed to except females from the practice of urinating in the rear of mail

trucks, there is no indication that Jackson alleged that only males were required to urinate in the

rear of mail trucks or that he alleged that he had been retaliated against because he complained

that males versus females were required to urinate in the rear of mail trucks.

Having received no clarification that Jackson was complaining about being required to

urinate in the rear of a mail carrier because of race, color, religion, sex, or national origin, the

ALJ moved on to determining whether Jackson was complaining about being retaliated against

because he had filed a prior charge of discrimination and a prior lawsuit.  The following colloquy

shows that Jackson's responses to the ALJ's questions about retaliation based on prior Title VII

activity were equally unhelpful:

ALJ:              Did you tell Mr. Nuncio that you had filed an EEO before this?

Jackson:          Say again?

_____

[19]*Id.* at p. 45.

ALJ:        Did you tell Mr. Nuncio that you had filed an EEO before this?

Jackson:    You're asking me something and you already know the answer to
            it.  I did not speak – the less I spoke to Mr. Nuncio, the better off I
            was because I had enough of him coming up to me –

ALJ:        Did you tell him you had previously filed an EEO, yes or no?

Jackson:    Yes.

ALJ:        When did you tell him?

Jackson:    What did I tell who?

ALJ:        When did you tell Mr. Nuncio that you had filed this previous
            EEO?

Jackson:    I don't ever recall telling Mr. Nuncio anything.

ALJ:        Okay.

Jackson:    That's why –

ALJ:        Then how did he know that you had prior EEO activity.  You've
            stated that he's lying.  How did he know?

Jackson:    Because he was with Mr. McNatt on a daily basis.  Every time I
            seen them, they were looking like him and her.

ALJ:        And you assumed that they were talking about you every time you
            saw them.

Jackson:    Well, whenever they approached me, it was for some – something
            negative.[20]

This colloquy shows that Jackson may have believed that Mr. Nuncio knew that he had filed a

previous charge of discrimination and a prior lawsuit, but it does not show that Jackson ever

charged or alleged that he was subjected to discrimination on the basis of retaliation for prior

---

[20]*Id.* at pp. 47-8.

EEO activity.  Taken together, Jackson's testimony indicates that he complained about being

retaliated against because he opposed the Postal Service practice of requiring mail carriers to

urinate in the rear of mail trucks.

Jackson's response to the government's motion to dismiss supports this conclusion.  In

his response, Jackson asserts that "having carriers urinating in postal vehicles to date on a routine

bases, is a gross violation of the public's trust that must be addressed."[21]  In the appendix

supporting his response, Jackson "challenge[s] the defendant's agents, referred to from hereon

as; the Agency, to prove routine acts of urinating in postal vehicles has never been permitted by

USPS management personnel of the Rio Grande District and or the illicit act has never

occurred."[22]  Jackson argued that the motion to dismiss must be denied until the question was

answered, "**why has the Agency allowed carriers to routinely urinate in postal (Federal)**

**vehicles, and retaliate against me when I disapprove?**".[23]  This response demonstrates that

Jackson is not complaining about conduct that is protected by Title VII.  In the absence of an

allegation that he was retaliated against because he opposed a practice made an unlawful

employment practice by Title VII or because he made a charge, testified, assisted, or participated

in any manner in an investigation, proceeding, or hearing under Title VII, Jackson failed to state

a claim upon which relief can be granted under Title VII.  In the absence of a claim upon which

relief can be granted, no genuine issue exists as to any material fact and the government is

---

[21]Docket entry # 10, p. 2, last ¶.

[22]*See id.*, appx. 1, p. 1.

[23]*See id.* at p. 2 (emphasis in original).

entitled to a judgment as a matter of law.[24]

### Recommendation

Jackson failed to allege facts sufficient to state a claim under Title VII's anti-retaliation provisions.  He failed to present any evidence that he has ever complained about conduct that is protected under Title VII.  Consequently, the Postmaster General is entitled to summary judgment on Jackson's claims.  I recommend GRANTING the government's motion (docket entry # 7) to the extent discussed in this memorandum and recommendation.  If Jackson presents, in objection to this recommendation, evidence that he opposed a practice made unlawful by Title VII or that Jackson alleged in a charge of discrimination that he was retaliated against because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, I will consider the merits of the government's arguments.  If Jackson does not present such evidence, the district court should DISMISS this case as a judgment as a matter of law under Rule 56.  Jackson should consider this memorandum and recommendation as formal notice of the district court's consideration of summary judgment on the grounds discussed herein.[25]

I also recommend warning Jackson that if he continues to file frivolous lawsuits against the Postmaster General, the district court will issue an order enjoining Jackson from filing any

---

[24]*See* FED. R. CIV. P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ).

[25]*See Matter of Hailey*, 621 F.2d 169, 171 (5th Cir. 1980) (observing that Rule 56 does not indicate that a judge may render a summary judgment sua sponte and explaining that before doing so, a party must be timely served and given an opportunity to respond and present summary judgment evidence).

future action against the Postmaster General in a federal court without permission from this

court.[26]  Between the times when Jackson filed his first lawsuit and this lawsuit, he filed two

other lawsuits against the Postmaster General—SA-05-CV-1246 and SA-06-CV-1123.  In SA-

05-CV-1246, Jackson complained that the Postmaster General retaliated against him when he

complained about workplace policies and that he had not been compensated for injuries he

sustained on the job in June 2001 and 2002.[27]   Those claims were the same claims Jackson

brought in his first lawsuit.  The lawsuit was dismissed for failure to pay the filing fee.  The

record for SA-06-CV-1123 does not confirm that Jackson sought to pursue the same claims as in

his first and second cases—because the lawsuit was dismissed for failing to pay the filing fee

before any papers were filed to clarify the nature of Jackson's claims—but naming the

Postmaster General as defendant evidences such an intent.  Even without clarification, naming

the Postmaster General in four lawsuits evidences bad faith and vexatiousness as at least three of

Jackson's four lawsuits are clearly based on the same core facts.  The district court should warn

Jackson now as a measure of due process before issuing a future order enjoining Jackson from

filing any future action against the Postmaster General without permission from this court.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and

recommendation on all parties who have entered an appearance, by either (1) electronic

---

[26]*See Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) ("[I]t is widely accepted that federal courts possess power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants from filing future state court actions without permission from the court.").

[27]*See* SA-05-CV-1246, docket entry # 4 (summarizing Jackson's claims).

transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of

Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.

Written objections to this memorandum and recommendation must be filed within 10 days after

being served with a copy of same, unless this time period is modified.[28]  **Such party shall file**

**the objections with the Clerk of the Court, and serve the objections on all other parties and**

**the magistrate judge.**  A party filing objections must specifically identify those findings,

conclusions or recommendations to which objections are being made and the basis for such

objections; the district court need not consider frivolous, conclusive or general objections.  A

party's failure to file written objections to the proposed findings, conclusions and

recommendations contained in this report shall bar the party from a *de novo* determination by the

district court.[29]  Additionally, failure to file timely written objections to the proposed findings,

conclusions and recommendations contained in this memorandum and recommendation shall bar

the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-

to proposed factual findings and legal conclusions accepted by the district court.[30]

     **SIGNED** on August 24, 2007.

                        *Nancy Stein Nowak*
                        NANCY STEIN NOWAK
                        UNITED STATES MAGISTRATE JUDGE

---

[28]28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

[29]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[30]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).